**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NEUROGRAFIX, NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC. IMAGE-BASED SURGICENTER CORPORATION, and AARON G. FILLER,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 12 C 6075** |
| **BRAINLAB, INC., BRAINLAB AG, BRAINLAB MEDIZINISCHE COMPUTERSYSTEME GMBH,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

The plaintiffs—NeuroGrafix, Neurography Institute Medical Associates, Inc. (NIMA), Image-Based Surgicenter Corporation (ISBC), and Dr. Aaron G. Filler—have sued the defendants—Brainlab, Inc., Brainlab AG, and Brainlab Medizinische Computersysteme GmbH (collectively, Brainlab)—for patent infringement. The plaintiffs have sought leave to file a motion after the deadline for dispositive motions, seeking sanctions in the form of a default judgment and damages for Brainlab's alleged misconduct during discovery.

**Background**

This case concerns a patent that describes methods and systems for creating images of neural tissues. It was consolidated with cases filed against other defendants for pretrial proceedings in a multidistrict litigation (MDL) proceeding. The Court

assumes familiarity with this case's factual background and procedural history, which this Court, the Federal Circuit, and the MDL transferee judge have described in prior written opinions.  *See NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2020 WL 1663105 (N.D. Ill. Apr. 4, 2020); *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2020 WL 919004, (N.D. Ill. Feb. 26, 2020); *NeuroGrafix v. Brainlab, Inc.*, No. 12 C 6075, 2020 WL 489529 (N.D. Ill. Jan. 30, 2020); *NeuroGrafix v. Brainlab*, Inc., 787 F. App'x 710 (Fed. Cir. 2019); *In re Neurografix ('360) Patent Litig.*, 201 F. Supp. 3d 206 (D. Mass. 2016).

The following facts are relevant for the purposes of the present opinion.  The parties dispute whether Brainlab, through a software called FiberTracking that it sells to hospitals, infringed or induced infringement of the at-issue patent.

The plaintiffs filed this case in August 2012.  In December 2012, they served Brainlab with a request for production under Federal Rule of Civil Procedure 34, seeking, among other things, documents sufficient to identify customers who purchased the FiberTracking software and documents related to customers' use of it.  In April 2014, the plaintiffs filed an amended complaint and, around a month later, they served Brainlab with a renewed request for production, which included requests similar to the ones just described.

In or around December 2016, Brainlab provided the plaintiffs with a list of customers who bought and/or licensed FiberTracking.  The parties dispute whether that list includes all of the customers relevant to this litigation.  They agree that the list was considered confidential and, pursuant to an order of the MDL court, Dr. Filler (a co-inventor of the method described in the patent, the holder of the patent, the CEO of NeuroGrafix, the president of IBSC, the designated representative of NIMA, and an

attorney representing the plaintiffs) was not permitted to see it. Neither party has submitted that list into the record for the present motions.

In December 2016, the plaintiffs filed a motion to compel Brainlab to, among other things, produce information concerning the identity of its customers, which the plaintiffs contended is relevant regarding their allegations of induced infringement. In January 2017, the MDL court denied that motion and stated that Brainlab had "already produced its customer list for FiberTracking" and that the parties should meet and confer "regarding the need for any specific customer contact information." MDL dkt. no. 362.[1]

Later in January 2017, at the joint request of the parties, the MDL court extended the pretrial deadlines. It set May 24, 2017 as the deadline for the completion of fact discovery and October 11, 2017 as the deadline for the filing of dispositive motions. MDL dkt. no. 364. In June 2017, the plaintiffs requested another extension of the schedule because they recently had filed a motion to amend the complaint and had engaged new counsel. The MDL court allowed the extension, subject to a limitation because "fact discovery has been ongoing for several years in this five-year old case." MDL dkt. no. 397. The court described the limitation as follows: "[t]he remaining fact discovery must focus on new issues raised by the proposed complaint and/or any new defenses, or that could not otherwise have been reasonably completed prior to this time." *Id.* The court then set August 22, 2017 as the deadline for fact discovery and January 9, 2018 as the deadline for dispositive motions. *Id.*

---

[1] The case number before the MDL court was 13 MD 02432-RGS. Throughout this opinion, the Court has indicated when it is citing to the MDL court's docket.

On August 22, 2017—the final day of the extended period of discovery—the plaintiffs served approximately 120 subpoenas on Brainlab's customers.

On August 31, 2017, the plaintiffs took the deposition of Joseph Doyle, a former Brainlab executive. (It appears the parties mutually had agreed that the plaintiffs could take the deposition after the close of fact discovery.) At the deposition, the plaintiffs' counsel asked Doyle whether customers or prospective customers sought to buy specifically the FiberTracking software. In response, Doyle stated, "We sell, you know, I think on [the] order [of] around sixty a year software licenses for our FiberTracking software in the U.S." Doyle Dep. Trans. at 16:4–6.

Soon after, on September 5, 2017, Brainlab filed a motion for a protective order, asking the MDL court to bar the subpoenas the plaintiffs had sent to its customers and to order the plaintiffs to notify the customers that they need not comply with the subpoenas. MDL dkt. nos. 418, 421. On September 6, the MDL court granted Brainlab's motion and found that the subpoenas were outside of the scope of discovery it had permitted during the extended timeframe. MDL dkt. no. 422. The court stated that it saw "no reason why discovery of Brainlab's customers - the would-be direct infringers and at the core of the indirect infringement claim - could not have been timely completed." *Id.*

The next day, September 7, 2017, the plaintiffs filed a motion to extend the discovery schedule. In that motion, the plaintiffs contend that they had uncovered two types of material information they alleged Brainlab withheld from discovery: an article co-authored by a Brainlab employee and alleged payments by Brainlab to physicians who allegedly used the FiberTracking software and served as consultants to Brainlab.

4

MDL dkt. no. 423.  The plaintiffs did not contend that Brainlab had withheld the identities of relevant customers.  *See id.*

On September 28, 2017, the MDL court denied the plaintiffs' motion to extend the discovery schedule, in part based on a finding that the plaintiffs had been aware of the relevant claim "since at least . . . December of 2013."  MDL dkt. no. 448.  The Court stated that the plaintiffs "must face the consequences for [their] failure to fully develop this claim in the more than three years since."  *Id.*  The Court then permitted a brief extension of the remaining discovery schedule, in light of the time it had taken to brief the motions, and it set the deadline for dispositive motions as February 8, 2018.  That deadline came and went, and the plaintiffs did not inform the MDL court of any contention that Brainlab had withheld many of its customers' identities.

Later, after the Federal Circuit overturned the MDL court's grant of summary judgment and decided the proper claim construction, *see NeuroGrafix*, 787 F. App'x at 718–20, and the case was remanded to this Court, the plaintiffs moved to reopen discovery.  They contended it would enable them to obtain discovery relating to the revised claim construction.  In December 2019, this Court reopened discovery solely "for the purpose of obtaining information needed for the parties to take into account and address the court of appeals' revision of the claim construction and to submit revised or supplemental expert reports based on that information."  Dkt. no. 181 at 2.  The Court required the parties to complete this limited additional discovery by February 14, 2020, and it set the trial date for June 1, 2020 (which later the Court vacated due to the coronavirus pandemic).

In January 2020, the plaintiffs asserted to Brainlab that it had not provided the full

customer list, and they indicated that they would seek a judgment against Brainlab on the basis of this alleged withholding of material information. At the time, the plaintiffs did not bring that contention to the attention of the Court.

During the reopened discovery period, the plaintiffs sent surveys to certain hospitals and/or physicians they suspected were customers of Brainlab. One physician, who works at a hospital not on Brainlab's customer list, replied on February 7, 2020. The plaintiffs contend that the physician's response indicated that the hospital where he works should have been included on Brainlab's customer list.

The plaintiffs subsequently moved for a discovery extension, and the Court twice extended the schedule solely to provide the plaintiffs with sufficient time to take the deposition of a particular neurosurgeon.

In a joint status report filed on March 30, 2020, the parties informed the Court that the plaintiffs planned to file a motion for default judgment concerning Brainlab's alleged withholding of customers' identities by April 9, 2020.

At some point in April 2020, Brainlab's damages expert provided an updated customer list that, the parties agree, had a narrower list of customers than the list Brainlab provided to the plaintiffs in December 2016. Brainlab contends that it narrowed the list to reflect the damages period it contends is appropriate, but the parties dispute the duration of the damages period. In addition, the list was not marked as confidential, and the parties dispute whether it was proper for Dr. Filler to view it.

On April 14, 2020, the plaintiffs moved for sanctions in the form of a default judgment. The next day, on April 15, 2020, the Court entered an order stating that it would not entertain the plaintiffs' motion for the entry of a default judgment "unless and

until plaintiff can show cause under Fed. R. Ci. P. 16(b)(4)," because it "is a dispositive motion filed after the deadline for dispositive motions." Dkt. no. 255. The plaintiffs then sought leave to file their motion for default judgment, and the parties filed briefs regarding the motion for leave. On April 28, 2020, the Court granted the plaintiffs' motion for leave to file a motion for default judgment and stated, "This does not mean that the Court has determined that the plaintiffs have shown good cause and acted with due diligence, which the parties have already briefed; instead, the Court will address that issue with the merits of the motion." Dkt. no. 280.

### Discussion

As indicated, the plaintiffs have asked the Court to extend the deadline for dispositive motions in order to permit them to file a motion seeking what they frame as a default judgment, which essentially amounts to a request for sanctions for misconduct during discovery. In the dispositive motion, the plaintiffs request a default judgment, contending that Brainlab, in bad faith, has withheld material information from discovery, specifically the identities of nearly 500 of its customers. They contend this allegedly withheld information has reduced the amount of available damages. By way of a judgment, the plaintiffs ask the Court to award them a substantial amount of damages— 56 million dollars, or eight times the maximum amount recommended by their expert— to reflect the number of allegedly hidden customers and as a sanction for Brainlab's alleged "discovery abuse." Mem. in Supp. of Default J. at 2.

Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In the Seventh Circuit, courts applying this good cause standard "primarily" consider "the

diligence of the party seeking" to modify the schedule. *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). "[A]mong the aims of Rule 16 are to prevent parties from delaying or procrastinating and to keep the case 'moving toward trial.'" *Id.* (quoting 1983 Advisory Committee's note).

The plaintiffs have not shown that they were diligent in seeing sanctions against Brainlab for its alleged withholding of its customers' identities, let alone the "extreme" sanction of default judgment and a very substantial amount of damages. *See Sun v. Bd. of Trustees of Univ. of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007) ("[A] default judgment should be used only in extreme situations, or when other less drastic sanctions have proven unavailing. . . . [I]t is a weapon of last resort, appropriate only when a party wilfully disregards pending litigation."). They contend that they had evidence suggesting that Brainlab had allegedly withheld customers' identities on August 31, 2017. That was when Doyle, the Brainlab executive, testified in a deposition that Brainlab issued around 60 licenses each year for its FiberTracking software. The plaintiffs contend this information suggested that the list of customers Brainlab had provided them was incomplete.

Regardless of the merits of that contention, the plaintiffs had opportunities to raise the alleged withholding of information to the MDL court during the timeframe for the dispositive briefing, and they did not do so. Specifically, they could have brought the issue to the MDL court's when, on September 7, 2017, the plaintiffs asked the MDL court to extend fact discovery based on two other types of information they contended Brainlab had withheld from them. They chose not to raise the point they now assert.

8

And they also had over five months between the date of Doyle's deposition and the extended deadline to file dispositive motions when they could have brought the issue to the MDL court's attention. Again, they chose not to do so.

The plaintiffs contend they did not inform the MDL court about Brainlab's alleged withholding of its customers' identities because they were "hesitant to seek further customer information outside of an approved discovery period." Mem. in Supp. of Leave to File Mot. for Default J. at 7. This contention does not hold water. The plaintiffs must not have been too hesitant to seek additional discovery because, as indicated, they asked the MDL court to extend discovery with regard to other allegedly withheld information. And, as the dockets before the MDL court and this Court show, the plaintiffs generally have showed little hesitance in filing motions after deadlines have passed. *See, e.g.*, dkt. no. 310 (motion by plaintiffs for leave to file motion for summary judgment of conveyed sales). Even if the plaintiffs' explanation is accurate, however, it represents a strategic choice that they cannot now undo.

The plaintiffs also did not show diligence in raising their contentions of alleged discovery abuse before this Court. Again, they had ample opportunity to do so. When they moved to reopen discovery after the case was remanded to this Court, the plaintiffs could have informed the Court that they had reason to believe Brainlab was withholding as many as 500 customers' identities, that they would like additional discovery on that issue, and that they intended to seek some remedy for Brainlab's conduct. Instead, they contended additional discovery was necessary solely with regard to the Federal Circuit's revision of the claim construction ruling. And though they told Brainlab in January 2020 that they planned to file the motion for a "default judgment," they did not

9

inform the Court of that plan until March 30, 2020, just over two months before the scheduled trial date. Even then, they filed the motion several days after the deadline they had set for themselves in a status report and did not seek leave to file it—as was plainly necessary given the dispositive motion deadline—until the Court instructed them to do so.

If the plaintiffs are contending that they did not have sufficient information to seek sanctions until the conclusion of the reopened period of discovery on February 14, 2020, that contention also falls flat. If anything, the record suggests the opposite: as early as January 2020, the plaintiffs told Brainlab that they would seek a judgment based on its alleged contempt in allegedly withholding its customers' identities. And even if the plaintiffs did, after that, discover additional information in support of their motion for sanctions, that information would have fallen outside the permissible scope of the reopened discovery because it does not relate to the Federal Circuit's revision of the claim construction. *See* Dkt. no. 181 at 2 (describing the scope of the reopened discovery).

In short, even construing due diligence generously, the plaintiffs have not come close to showing that they were diligent in seeking sanctions in the form of a default judgment and 56 million dollars in damages. For these reasons, the Court finds that the plaintiffs have not shown good cause to extend the deadline for dispositive judgments in order to allow them to file their motion for such sanctions. The Court thus denies their motion for leave to file a motion for "default judgment" and, accordingly, need not address the merits of that motion.

10

**Conclusion**

For the foregoing reasons, the Court denies the plaintiffs' motion for leave to file

a motion for default judgment [dkt. no. 266].  This renders moot their motion for a default

judgment (i.e., sanctions) [dkt. no. 247].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 19, 2020