**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **NEUROGRAFIX, NEUROGRAPHY INSTITUTE MEDICAL ASSOCIATES, INC. IMAGE-BASED SURGICENTER CORPORATION, and AARON G. FILLER,** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 12 C 6075** |
| **BRAINLAB, INC., BRAINLAB AG, BRAINLAB MEDIZINISCHE COMPUTERSYSTEME GMBH,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This patent infringement lawsuit brought by NeuroGrafix, Neurography Institute Medical Associates, Inc., Image-Based Surgicenter Corporation, and Dr. Aaron G. Filler against Brainlab, Inc., Brainlab AG, and Brainlab Medizinische Computersysteme GmbH (collectively, Brainlab) is set for trial on November 2, 2020. In this decision, the Court rules on most of the parties' motions *in limine* and *Daubert* motions, while reserving several for further argument at a hearing the Court will schedule for a date to be set at the conclusion of this opinion.

**A.**     **Brainlab's motions *in limine*[1]**

        **1.**     **Exclusion of expert testimony**

Brainlab seeks to exclude testimony by the plaintiffs' experts on various topics that Brainlab contends the experts did not cover in their reports.[2]  A party that intends to rely upon an expert witness's testimony must furnish disclose, among other things, "a complete statement of all opinions" the retained expert will provide "and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(C); *see also, e.g.*, *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 641 (7th Cir. 2008).  Failure to comply with this requirement requires barring a party from introducing undisclosed expert testimony unless "the offending party can establish that its violation of Rule 26(a)(2) was either justified or harmless."  *Id.* (internal quotation marks omitted); *see also* Fed. R. Civ. P. 37(c)(1).  The Court addresses each of the different types of expert testimony Brainlab seeks to exclude.

        **a.**     **Infringement of claims other than claim 36 (Brainlab's motion 1(a))**

Brainlab seeks to exclude testimony from the plaintiffs' experts on the infringement of claims other than claim 36 because, it contends, the plaintiffs have not submitted expert testimony with analysis concerning the infringement of other claims.  In

---

[1] To the extent either party has contended in its response to the other party's motions *in limine* that certain expert testimony or evidence should be excluded, the Court has disregarded those contentions. The proper place for each party to assert such contentions was in their own motions *in limine*, not in their response to the other party's motions.

[2] In the section of their motion regarding the exclusion of expert testimony, Brainlab included a motion seeking to exclude all arguments and evidence that its customers use an MRI scan in which the gradient pulse is split in half.  Because this request does not specifically concern expert testimony, the Court addresses it in the next section of this opinion.

response, the plaintiffs contend that expert testimony by Dr. David Laidlaw, a professor of computer science, provides analysis concerning the infringement of claims 39 and 46. But in the testimony referenced by the plaintiffs, Dr. Laidlaw states only that a person using the FiberTracking software would be completing the steps of "at least" Claim 36 of the '360 patent. MDL Dkt. no. 495-5 at 8. The testimony does not provide any actual analysis of the infringement of other claims.

The plaintiffs appear to contend that Dr. Filler, in his April 17, 2020 expert rebuttal report in response to Brainlab's supplemental expert report on invalidity, has connected the dots between Dr. Laidlaw's testimony and other claims. The Court has recently indicated that Dr. Filler's rebuttal report may be unnecessary, depending on the admissibility of the report it rebuts. But, regardless, the testimony by Dr. Filler that the plaintiffs point to describes the methods of the other claims and, as the plaintiffs put it, their "terminology," Pls.' Resp. to Defs.' Mots. *in Limine* at 5, not their infringement.

That said, in their response, the plaintiffs reference claims 39 and 46, which both depend from claim 37, which, in turn, depends from claim 36. Though their explanation is not clear, the plaintiffs may be suggesting that Dr. Laidlaw's testimony about claim 36 provides, at least in part, a basis to show that users of FiberTracking infringe other claims. But they have not explained this in any coherent way in their written submissions. The Court will set this particular motion for further argument in the hope of getting a better understanding of how, if at all, plaintiffs may be contending that Dr. Laidlaw's testimony, though aimed directly at claim 36, may bear on the question of infringement of the other dependent claims that plaintiffs are asserting.

### b. Brainlab's customers' formation of an intent to "select a structure" (Brainlab's motion 1(c))

Three steps of claim 36 of the patent involve a "selected structure" limitation, and the Federal Circuit revised the MDL judge's construction of that term. *See NeuroGrafix v. Brainlab, Inc.*, 787 F. App'x 710, 718–19 (Fed. Cir. 2019). Brainlab contends that the plaintiffs have submitted no expert testimony regarding whether the intent to select a structure before conducting a DTI scan infringes the patent or whether the use of functional MRI prior to a DTI scan infringes the patent. It seeks to exclude any expert testimony on those topics.

In response, the plaintiffs contend that the Court need not "limit" them to their "use of the term 'Selected Structure' made prior to the Federal Circuit ruling." Pls.' Resp. to Brainlab's Mots. in Limine at 7. This contention makes no sense. Brainlab is not asking the Court to limit the plaintiffs' use of a term but, rather, to limit the admission of expert testimony on certain topics. More to the point, the plaintiffs contend that expert testimony is not necessary for them to prove that direct infringers performed each step of a claim. And they do not contend that they have obtained testimony by an expert on the topics Brainlab challenges. Instead, they point to testimony by one of their fact witnesses, which they contend goes to the issue of intent to select a structure.

The Court grants Brainlab's motion to exclude testimony by plaintiffs' experts on whether the intent to select a structure before conducting a DTI scan infringes the patent or whether the use of functional MRI prior to a DTI scan infringes the patent. Plaintiffs have not shown in their response to Brainlab's motion that their experts have provided such testimony and have not shown that the failure to do so is justified or harmless.

4

### c. Plaintiffs' survey expert's report (Brainlab's motion 1(d))

Brainlab seeks to exclude any expert testimony construing the expert report by the plaintiffs' survey expert as evidence of infringement. The Court needs to hear further argument regarding this motion.

### 2. Other motions by Brainlab

### a. Step where the gradient pulse is "split in half" (Brainlab's motion 1(b))

Brainlab contends that the parties agree that claim 36 requires a step they describe as "splitting the gradient pulse in half." Brainlab's Mots. *in Limine* at 4. But in fact, the parties apparently do not agree on that; the plaintiffs respond that claim 36 does not require a pulse-splitting step, which, they contend, is merely a preferred embodiment from the patent's specification.

Nonetheless, Brainlab seeks to exclude evidence and argument that its customers engage in this pulse-splitting step. It contends that the plaintiffs have never asserted that its customers engage in the step or offered expert testimony opining that its customers do so.[3] In response, the plaintiffs essentially contend claim 36 "covers all methods in which a non-Cartesian gradient is generated," but they do not clearly explain whether a split pulse is a non-Cartesian gradient, let alone whether they have asserted arguments or offered evidence suggesting that Brainlab's customers engage in a step

---

[3] As indicated, though Brainlab included this motion in the section of its brief requesting the exclusion of certain testimony by experts, they actually are seeking the exclusion of all arguments and evidence concerning the splitting of the gradient pulse in half, so the Court addresses the motion in this section of the opinion. In addition, the Court notes that Brainlab states in one place that it seeks to exclude just evidence of this pulse-splitting and in another place that it seeks to exclude both evidence and testimony. Brainlab's Mots. *in Limine* at 4–5.

where they split the gradient pulse. *See* Pls.' Resp. at 5–7. The Court needs to hear further argument on this motion. The parties should be prepared to explain what they mean by pulse-splitting and exactly where, if at all, the plaintiffs have presented evidence or made assertions that Brainlab's customers engage in pulse-splitting.

### b. Evidence of convoyed sales for Brainlab's BrainSuite system (Brainlab's motion 2(a))

The Court grants Brainlab's motion to exclude evidence of convoyed sales for Brainlab's BrainSuite system. The MDL transferee judge limited discovery to Brainlab's FiberTracking software and software bundled with it, which neither party contends encompasses the BrainSuite system. The plaintiffs have not shown that they ever sought to revisit this limitation on the scope of discovery based on the contentions they now raise—that a recent Federal Circuit decision supports their position that convoyed sales are appropriate in this case and that they are prepared to present expert evidence regarding BrainSuite—or any other contentions. In addition, they have not explained how evidence of convoyed sales for BrainSuite is relevant to the issues within the scope of discovery authorized by the MDL transferee judge. *See* Fed. R. Evid. 401.

### c. Testimony by Dr. Filler (Brainlab's motion 2(b))

The Court denies without prejudice Brainlab's motion to exclude testimony by Dr. Filler regarding the value of Brainlab's products, the legal and factual basis for the plaintiffs' damages, and the plaintiffs' abilities to offer similar services as Brainlab to Brainlab's customers. Brainlab seeks to exclude this evidence because, it contends, Dr. Filler's various roles in the case and his substantive disagreements with the plaintiffs' other damages expert would confuse the jury. The Court disagrees; any such confusion, assuming it exists, can be alleviated through a cautionary instruction to the

6

jury.[4]  If Brainlab is contending that Dr. Filler lacks an appropriate foundation or qualifications to testify on damages, that contention is deficient because Brainlab makes no attempt to explain it or cite evidence in support of it.

### d. Entitlement to lost profits (Brainlab's motion *in limine* 2(c))

The Court grants Brainlab's motion to exclude arguments and evidence regarding the plaintiffs' entitlement to lost profits, because the Court has granted summary judgment in favor of Brainlab on the issue of lost profits.  The plaintiffs' contentions that the Court's ruling was erroneous are issues that they may raise on appeal if they wish.

### d. Duration of damages (Brainlab's motion *in limine* 2(d))

To be liable for induced infringement under 35 U.S.C. § 271(b), a party must know "that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).  The parties dispute whether, under the doctrine of willful blindness, Brainlab had the requisite knowledge prior to receiving a letter from Dr. Filler in May 2009 and thus could be liable for induced infringement. Brainlab moves to exclude arguments and evidence that the period for damages started before Dr. Filler sent the May 2009 letter.  This is a dispute regarding the merits, not the admissibility of evidence.  A motion *in limine* thus is not the proper procedural mechanism for the Court to adjudicate this dispute.  Accordingly, the Court denies Brainlab's motion.

### e. Professionalism (Brainlab's motion 2(e))

The Court denies Brainlab's motion asking the Court to order Dr. Filler to show

---

[4] The potential for confusion is likely far less than Brainlab suggests; due to the operation of the advocate-witness rule, Dr. Filler will not be acting as counsel during the trial but only as a party and, it appears, a witness.

7

professionalism at trial. The Court has the expectation that all parties, attorneys, and witnesses will conduct themselves with professionalism at trial. If any party believes another party is acting inappropriately, it may object in a timely fashion at trial.

**B.   Plaintiffs' *Daubert* motions and motions *in limine***

The plaintiffs' motions include motions seeking to exclude expert testimony under Federal Rule of Evidence 702 and the governing caselaw, including *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For clarity's sake, the Court addresses first the plaintiffs' *Daubert* motions and then their motions *in limine*.

**1.      Plaintiffs' *Daubert* motions**

Expert testimony is admissible if the witness is qualified, applies reliable methodology, and is rendering testimony that will assist the trier of fact. *See id.* at 597. "The objective of [*Daubert*'s gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "It is to make certain that an expert, with testimony based upon professional studies and personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The party seeking to introduce expert witness testimony bears the burden of demonstrating, by a preponderance of the evidence, that it satisfies the *Daubert* standard. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017).

**a.      Robert Brlas (plaintiffs' motions 2 and 19)**

The plaintiffs seek to exclude the testimony of Brainlab's damages expert Robert Brlas in its entirety because, they contend, he lacks experience in the medical and patent law fields. A court's role, however, is not to ask whether a witness "is qualified in

8

general" but rather "whether his qualifications provide a foundation for him to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (internal quotation marks and alteration omitted).  Courts generally do not require an expert to be a specialist in a given field.  *Id.*  An expert's lack of specialization "typically goes to the weight to be placed" on a specific opinion, not to its admissibility.  *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016).

The plaintiffs largely address Brlas's qualifications in general terms, without regard to whether he is qualified to answer specific questions on medical or legal issues.  That said, they mention a few specific opinions Brlas stated: tractograms are produced by MRI scanners; damages should be based on the sale price of the FiberTracking software; the negotiation of a royalty is complicated; and it would be too complicated to calculate a reasonable royalty from the direct infringement of the '360 patent.[5]  The plaintiffs' motions are deficient, however, because they have provided no citations to any of these specific opinions offered by Brlas or, for that matter, to any opinions or conclusions Brlas provided in his in lengthy reports.  The Court therefore denies these motions, without prejudice.

### b.    Dr. Michael Moseley (plaintiffs' motions 3 and 4)

The plaintiffs seek to exclude testimony by Brainlab's damages expert Dr. Michael Moseley on two grounds.  First, they contend that Dr. Moseley is not qualified to

---

[5] The plaintiffs style their motion challenging Brlas's opinion that it would be too complicated to calculate a reasonable royalty as a motion under Federal Rule of Evidence 403.  But in the motion, they essentially raise a *Daubert* issue because they challenge Brlas's qualifications.  Regardless, to the extent the plaintiffs are making an argument under Rule 403, they have not attempted to explain how this evidence would cause unfair prejudice, confuse the issues, or mislead the jury.  *See* Fed. R. Evid. 403.

serve as an expert witness on enablement with regard to connected voxel algorithms because he stated in his deposition that he was not an expert in that area. The parties appear to agree that Dr. Moseley is not an expert in this area. But as Brainlab describes it, Dr. Moseley's testimony will reflect that he is not an expert on such algorithms and that it is not necessary for someone performing a DTI to understand those algorithms in order to perform the final step of claim 36. Thus this testimony essentially concerns the performance of claim 36, on which the plaintiffs have not contended Dr. Moseley is unqualified. Therefore, the Court denies the plaintiffs' motion to exclude Dr. Moseley's testimony on enablement as it pertains to connected voxel algorithms.

In addition, the plaintiffs seek to exclude Dr. Moseley's testimony on invalidity and infringement because they contend he is biased. This bias, they contend, stems from his belief that *he* invented DTI and tractography, which the plaintiffs dispute and which they assert will motivate him to form opinions that are not based on facts. An expert's alleged bias, however, is not a proper basis on which to exclude his or her testimony under *Daubert* or Rule 702. *See Cage v. City of Chicago*, 979 F. Supp. 2d 787, 827 (N.D. Ill. 2013) (collecting cases); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03 C 7713, 2005 WL 4034698, at *3 n.3 (N.D. Ill. Dec. 21, 2005) ("[A]lleged bias is fodder for cross-examination and impeachment, not a ground for exclusion [of expert testimony]."). Any bias on the part of a witness would go to the weight of a specific opinion, not to its admissibility. *See Cage*, 979 F. Supp. 2d at 827 (citing *DiCarlo v. Keller Ladders, Inc.*, 211 F.3d 465, 468 (8th Cir. 2000)). Therefore, the Court denies plaintiffs' motion to exclude Dr. Moseley's testimony on invalidity and infringement.

10

### 2. Plaintiffs' other motions *in limine*

### a. Collateral sales apportionment (plaintiffs' motion 1)

The plaintiffs move to exclude evidence and argument concerning collateral sales apportionment as it pertains to reasonable royalties. They contend that issue should be decided as a matter of law by the Court. As explained earlier in this ruling, however, the MDL transferee judge limited the accused instrumentality in this case solely to the FiberTracking software and software bundles to the extent they include FiberTracking. *See* MDL dkt. no. 362. The plaintiffs' argument on this issue is not a model of clarity, but they appear to contend they are entitled to collateral sales from BrainSuite, which, as discussed earlier in this opinion, is not relevant to the present case. If the issue is not part of the litigation, there is no basis for the Court to decide it as a matter of law. The plaintiffs never sought reconsideration of the MDL Court's 2017 decision that only the FiberTracking software was at issue in this case, and they cannot do so by way of a motion *in limine*. The Court therefore denies the plaintiffs' motion.

### b. License agreements with Siemens, Philips, GE, Toshiba, Hitachi, and Medtronic (plaintiffs' motions 5 and 6)

The plaintiffs move under Rule 403 to exclude evidence and argument concerning license agreements with Siemens, Philips, GE, Toshiba, Hitachi, and Medtronic. The plaintiffs, however, do not describe the license agreements or provide citations to the record for them, and they do not explain why that evidence or arguments about the licenses would be offered—though one assumes it has something to do with proof of a reasonable royalty. That said, they contend that each of these license agreements was the result of a litigation settlement, each of the license agreements other than the Medtronic one was for a multi-function MRI machine, and the Medtronic

agreement was for a yet-to-be developed product (which they do not describe except to suggest it related to tractography).

If the evidence regarding these license agreements is being offered to prove the amount of reasonable royalties, the Federal Circuit "has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). "The propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable," though they may be used to establish reasonable royalties "under certain limited circumstances," such as where the settlement agreement is "the 'most reliable license in [the] record.'" *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012) (quoting *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010)) (district court should have excluded under Rule 403 evidence of a settlement agreement that had "very little relation to demonstrated economic demand for the patented technology"). In addition, where "a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014)

The plaintiffs contend that the license agreements do not represent the value of a hypothetical negotiation between the parties. This, they contend, is because the agreements were made pursuant to settlements and, apart from the Medtronic agreement, concerned MRI scanners that had many uses other than those involving the

patented method.  Brainlab does not respond to those contentions.  Instead, it asserts

that "it is too late" for the plaintiffs to seek the exclusion of this evidence because the

plaintiffs' own expert, Mr. Elmore, has relied on it.  Pls.' Reply at 9; *see also id.* at 10.

As indicated, however, it is not entirely clear to the Court what evidence and arguments

at issue here.  Accordingly, the Court needs to hear further argument on this motion.

### c.    Advice from Brainlab's attorneys regarding licensing (plaintiffs' motion 7)

The plaintiffs move under Rule 403 to exclude evidence and arguments that

Brainlab, in deciding not to license the '360 patent, sought or relied on the advice of its

counsel.  In response, Brainlab does not provide any description of advice that it intends

to offer into evidence; rather, it points to testimony that unidentified attorneys provided

unspecified advice upon which Brainlab relied.  This raises a significant danger of unfair

prejudice.  Evidence that legal advice was provided and relied upon very well could be

understood by a jury to indicate that Brainlab's attorneys told the company that the '360

patent was invalid.  But without the advice being introduced, the plaintiffs would not

have a fair chance to challenge this.  The Court will not permit the defendants to

suggest to the jury that they relied upon legal advice but remain silent on what it was.

The probative value of such evidence and argument is significantly outweighed by the

danger of unfair prejudice to the plaintiffs.  The Court therefore grants the plaintiffs'

motion.

### d.    Claims other than claim 36 (plaintiffs' motion 8)

The plaintiffs seek to exclude evidence and arguments asserting that claims

other than claim 36 are not at issue in this case or that the plaintiffs have not alleged

that other claims have been infringed.  This motion appears to be uncontested; Brainlab

13

asserts it will not argue that claims 36, 39, and 47 are not at issue or that the plaintiffs have not alleged those claims. Accordingly, the Court grants the plaintiffs' motion.

### e. Dr. Filler's roles in the case (plaintiffs' motion 9)

The plaintiffs move to exclude under Rule 403 various types of evidence and argument relating to Dr. Filler. First, they seek to exclude evidence and argument relating to the multiple roles Dr. Filler has plays in this case because, they contend, it would unfairly portray him as having "an improper advantage over a multi-billion-dollar corporation with well-funded and very experienced patent counsel." Pls.' Corr. Mots. *in Limine* at 17. In addition, they seek to exclude evidence and arguments about Dr. Filler's motivations for bringing this lawsuit, specifically his financial motivations.

The Court denies this motion without prejudice to a more particularized objection.[6] The plaintiffs have not explained how such evidence or argument would unfairly prejudice them, confuse the issues, or mislead the jury. And the Court notes that, to the extent Dr. Filler will be testifying, his financial interest in the outcome of the case given his status as a party is a perfectly legitimate topic for examination by the defendants. On the flip side, however, the Court is highly skeptical that any evidence, argument, or contentions by the defendants based on Dr. Filler's role as counsel have any probative value at all, seeing as how he will be prohibited from acting as an attorney during the trial. If the parties need further clarification on these points, they may bring

---

[6] The plaintiffs do not appear to contend that they would like or expect Dr. Filler to act as an attorney at trial. In any event, the Court reminds the parties of its previous ruling, pursuant to the so-called advocate-witness rule, that Dr. Filler may not act as an advocate at trial. *See* dkt. no. 265 (the advocate-witness rule "in general terms, prohibits a lawyer from acting as advocate in a trial in which he is likely to be a necessary witness" (citing ABA Model. R. of Prof'l Conduct 3.7(a))).

up the issue at the final pretrial conference.

The Court grants the plaintiffs' motion to the extent it seeks to exclude contentions that Dr. Filler is litigious, a "patent troll," and a "solo inventor." Any probative value this information might hold is substantially outweighed by the danger of unfair prejudice it poses to Dr. Filler and the other plaintiffs. *See* Fed. R. Evid. 403.

### f. Proceedings before the Patent Trials and Appeals Board and the Federal Circuit (plaintiffs' motions 10 and 11)

In motions 10 and 11, the plaintiffs ask the Court to bar Brainlab from objecting to any mention of the plaintiffs' success before the Patent Trials and Appeals Board (PTAB) and the Federal Circuit relating to the '360 patent. This is an odd motion *in limine*; ordinarily they ask to exclude or admit evidence, not preclude objections. In response, however, Brainlab contends that the particular claims of the '360 patent that were at issue in contested proceedings before the PTAB are not the claims asserted in this case, that is, claims 36, 39, and 47. That seems to be so; the plaintiffs do not argue otherwise in their reply. Because the plaintiffs have not explained why the proceedings before the PTAB are relevant, the Court denies motion 10, which concerns the PTAB proceedings.

As for the Federal Circuit, the plaintiffs clarify in their reply that the Federal Circuit decision they are referencing is the November 2019 decision reversing the grant of summary judgment. The Court cannot imagine how evidence or argument relating to that decision has any bearing on any issue the jury will have to decide; the claim construction decided upon by the Federal Circuit is a *fait accompli* that will be presented to the jury, as necessary, via instructions. There is no need, and no basis, to discuss the proceedings before the Federal Circuit that led to the reversal of the summary

15

judgment ruling—and the plaintiffs have offered no explanation to the contrary. For this reason, the Court also denies motion 11 and precludes any reference to the Federal Circuit decision.

### g. Brainlab's customers' intent in selecting the pyramidal tract (plaintiffs' motion 12)

The Court denies without prejudice plaintiffs' motion, brought under Rule 403, to exclude evidence and argument suggesting that Brainlab's users never intend to select the pyramidal tract before starting a brain DTI scan. The plaintiffs essentially are framing this disputed factual issue as an evidentiary one by contending that such evidence lacks probative value because they feel they can prove it is false. A motion *in limine* is not the proper place for the plaintiffs to ask the Court to decide contested factual issues. Moreover, contrary to the plaintiffs' suggestion in their reply brief, the Federal Circuit has not decided this issue. The Federal Circuit merely stated that a user who knows the location of the pyramidal tract before starting a DTI brain scan could infringe the '360 patent. *See NeuroGrafix*, 787 F. App'x at 719. It did not decide whether or not Brainlab's customers had the intent to select the pyramidal tract before starting a DTI scan. *See id.*

### h. MRI scans of part of the brain (plaintiffs' motion 13)

The Court denies without prejudice the plaintiffs' motion under Rule 403 to exclude evidence and argument asserting that they have suggested that it is possible to do an MRI scan of only part of the brain. This motion is not properly supported. The plaintiffs contend that Brainlab's experts and customers have asserted that plaintiffs have made such a suggestion, but they have provided no citations supporting this, even after Brainlab responded that no such assertions are in the record. In addition, the

16

plaintiffs have not attempted to explain how this evidence and these arguments would cause unfair prejudice, confuse the issues, or mislead the jury. *See* Fed. R. Evid. 403.

### i.   Neurosurgeons' and/or neuroradiologists' knowledge of brain anatomy (plaintiffs' motions 14 and 15)

The Court denies without prejudice the plaintiffs' request to exclude under Rule 403 evidence and assertions that neurosurgeons and/or neuroradiologists do not know where important parts are the brain are located anatomically. The plaintiffs have not attempted to explain how this evidence and argument would cause them unfair prejudice, confuse the issues, or mislead the jury.

Moreover, to the extent this is an attempt by the plaintiffs to ask the Court, by way of a motion *in limine*, to address a contested factual issue on the merits—how much a neurosurgeon or neuroradiologist knows about the anatomy of a particular brain before scanning it and thus whether he or she can select a structure before conducting the scan—the motion is inappropriate.

### j.   Plaintiffs' use or testing of the FiberTracking software (plaintiffs' motion 16)

The Court denies without prejudice plaintiffs' motion under Rule 403 to exclude evidence and arguments suggesting that they have not used or tested the FiberTracking software, either at all or before some specified date. The plaintiffs have not attempted to explain how this evidence or these arguments would cause them unfair prejudice, confuse the issues, or mislead the jury. *See* Fed. R. Evid. 403.

### k.   Requirements in Brainlab's manual (plaintiffs' motion 17)

The plaintiffs move to exclude evidence and argument suggesting that Brainlab's manual does not require users to select a structure in order to conduct a DTI scan.

They contend that the text of the manual indicates that users must select a structure to generate a DTI image of certain areas of the brain such as pyramidal tracts, which they contend contradicts Brainlab's assertions that it does not recommend its users do so. Brainlab disputes whether its manual has such a requirement. But these disputes go to the merits, not the admissibility at trial of evidence on this point.

To the extent the plaintiffs are suggesting that the introduction of evidence and argument on the issue would contradict the Federal Circuit's decision and thus confuse the jury, that is incorrect. The Federal Circuit reversed the MDL transferee judge's grant of summary judgment and indicated that the judge's "apparent holding that Brainlab's advertisements and manual do not induce infringement as a matter of law was procedurally improper." *NeuroGrafix*, 787 F. App'x at 718. The court explained that this holding was improper because Brainlab had not argued that its advertisement and manuals did not instruct users on "how to use the software in an infringing matter"; the court did not determine whether the manuals told users they needed to select a structure in order to conduct a DTI scan. *See id.*

## I. Use of a certain FiberTracking module (plaintiffs' motion 18)

The plaintiffs move under Rule 403 to exclude evidence and argument suggesting that a certain module of the FiberTracking software has any noninfringing use. They assert that this would confuse the jury because they have contradictory evidence that they contend proves the module is infringing. But that contention reflects that this involves another disputed factual issue that is not an appropriate basis for a motion *in limine*. In short, the probative value of evidence and arguments regarding infringement is not substantially outweighed by the chance it might confuse the jury;

18

juries are capable of considering contradictory evidence and resolving factual disputes. *See* Fed. R. Evid. 403. The Court denies the motion.

### m. Smallest patent practicing unit (plaintiffs' motion 20)

The plaintiffs move under Rule 403 to exclude evidence and argument asserting that the FiberTracking software is the smallest patent practicing unit. They contend the software itself does not practice the '360 patent because people must perform the patents' method. In response, Brainlab contends that an expert for plaintiffs stated that FiberTracking *is* the smallest possible unit, and they suggest that the plaintiffs are attempting to distance themselves from that statement. The plaintiffs' reply points to their reply on an earlier motion *in limine* where they challenged a statement by an expert for the defendants to the effect that FiberTracking was the smallest possible unit.

This motion is deficient because the plaintiffs have not attempted to explain how this evidence and these arguments would cause them unfair prejudice, confuse the issues, or mislead the jury. *See* Fed. R. Evid. 403. The Court therefore denies the motion, without prejudice.

### n. Dr. Peter Basser's gold medal (plaintiffs' motion 21)

The plaintiffs move under Rule 403 to exclude evidence and argument asserting that Dr. Peter Basser has won a gold medal from the International Society for Magnetic Resonance in Medicine (ISMRM) for inventing DTI, which Brainlab's expert Dr. Moseley discussed at his deposition. It is not entirely clear to the Court from Brainlab's response the basis upon which it intends to offer evidence or argument concerning the award. If Brainlab is offering the evidence to show that Dr. Basser (and not Dr. Filler) invented DTI—as Brainlab's response suggests—the evidence is inadmissible hearsay for this

19

purpose:   the award is an out-of-court statement offered to prove the truth of what is stated in (or in support of) the award.  To be sure, an expert may rely on facts that otherwise would be inadmissible if they are of the type reasonably relied upon by experts in the field.  But they may not communicate inadmissible evidence unless the probative value of the evidence in assessing the expert's opinion substantially outweighs its prejudicial effect.  *See* Fed. R. Evid. 703.  Defendants have not made that showing, nor could they.

Alternatively, if Brainlab is offering evidence of Dr. Basser's gold medal as evidence of his character and reputation in the MRI and DTI field—as their response also suggests—it is inadmissible under Rule 404(a)(3).  That rule provides that evidence of a witness's character may be admitted in limited circumstances, but it does not apply to Dr. Basser because he is not testifying in this case.

Therefore, the Court grants the plaintiffs' motion to exclude evidence and arguments asserting that Dr. Peter Basser has won a gold medal from the ISMRM or the basis upon which the gold medal was awarded.

### o.    Split pulse requirement (plaintiffs' motion 22)

The plaintiffs seek to exclude evidence and arguments asserting that any claim of the '360 patent requires a so-called split pulse.  As the Court explained earlier in this opinion with regard to Brainlab's motions *in limine*, the parties appear to dispute whether the patent's claims require a split pulse, whether the plaintiffs have asserted that it is required, and whether the plaintiffs have provided expert testimony regarding it.  The Court needs to hear further argument on this motion.

p.   **Inducement of affiliated authorized physicians and categorization of doctors in a medical group associated with a hospital (plaintiffs' motion 23)**

The plaintiffs move to exclude evidence and argument to the effect that recoverable damages should not account for the actions of authorized physicians affiliated with hospitals that are Brainlab's customers. Brainlab disagrees; it contends these physicians are not employed by the customer-hospitals and thus that their uses of FiberTracking are irrelevant. More importantly for purposes of this decision, Brainlab contends that the law of this case, as decided by the MDL transferee judge and left undisturbed by the Federal Circuit, is that the use of FiberTracking by physicians who are affiliated with Brainlab's customer-hospitals but not employed by them cannot be included in damages calculations.

A review of the record is instructive here. In August 2016, the MDL court granted Brainlab's motion for summary judgment of non-infringement "in connection with . . . the so-called unauthorized independent medical practitioners." MDL dkt. no. 328; *see also NeuroGrafix*, 787 F. App'x at 713 (describing the MDL court's ruling). The MDL court explained: "with respect to indirect infringement by unauthorized independent medical practitioners, Brainlab points out plaintiffs have no evidence that any of the handful of such practitioners identified by plaintiffs used Brainlab products in their alleged infringement." MDL dkt. no. 328. The plaintiffs challenged this finding before the Federal Circuit, arguing that Brainlab can still induce a physician who is not its direct or indirect customer to infringe the '360 patent. Pls.' Corr. Mots. *in Limine*, Ex. C at 89–90. But the Federal Circuit did not address this argument or overturn the MDL court's finding. *See NeuroGrafix*, 787 F. App'x at 716–20. Thus the MDL court's finding is the

21

law of the case, and the Court will not reconsider it. *See, e.g.*, *Halpern v. Principi*, 384 F.3d 1297, 1301 (Fed. Cir. 2004) ("Under the law of the case doctrine, a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." (internal quotation marks omitted)).  And though the plaintiffs contend that Brainlab "attempts to sew [sic] confusion by misleading partial citation," Pls.' Reply at 10, they have not cited to any part of the record showing that this is not the law of the case.

Accordingly, because the MDL transferee judge previously ruled on this issue adversely to the plaintiffs, the Court denies the plaintiffs' motion to exclude evidence and arguments that damages should not include the actions of those physicians.

### q.    Unauthorized users (plaintiffs' motion 24)

The Court denies without prejudice the plaintiffs' motion under Rule 403 to exclude evidence and argument to the effect that doctors in a medical group with a hospital constituted unauthorized users.  The plaintiffs have not attempted to explain how this would cause them unfair prejudice, confuse the issues, or mislead the jury. *See* Fed. R. Evid. 403.  The Court notes, however, that to the extent the plaintiffs are contending that the distinction between doctors in a medical group who are affiliated with a hospital and those who are not is irrelevant, that contention lacks merit.  As just explained, the MDL transferee judge previously concluded that unaffiliated (or unauthorized) physicians' conduct is not actionable indirect infringement attributable to Brainlab, and thus that distinction *is* relevant to identifying whether a particular physician's conduct could be infringing.  *See* Fed. R. Evid. 401.

**Conclusion**

The Court denies the plaintiffs' motion to stay the Court's ruling on the parties' motions *in limine* [dkt. no. 323]. That motion is deficient because the plaintiffs have not explained how the upcoming depositions cited in the motion affect any motion *in limine* and have not tied information at issue in the upcoming depositions to any of the pending motions. The Court rules on Brainlab's motions *in limine* [dkt. no. 284] and the plaintiffs' corrected motions *in limine* [dkt. no. 287] in the manner described in this opinion. This renders moot the plaintiffs' original motions *in limine* [dkt. no. 285], which was superseded by their corrected version of those motions. The Court sets this case for a hearing on July 29, 2020 at 2:00 p.m. for further argument on the points identified in this opinion.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 6, 2020